IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TERRY LATHAM,

        Plaintiff,

vs.                                       No. CV 09-0643 MV/ACT

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion and Memorandum for Partial Summary Judgment on Plaintiff's Discrimination Claims [Doc. 25].  The Court, having considered Defendant's Motion, Plaintiff's Response [Doc. 34], Defendant's Reply [Doc. 37], the relevant law, and being otherwise fully informed, finds that Defendant's Motion is well-taken and will be **GRANTED** for the reasons stated herein.

## BACKGROUND

Plaintiff Terry Latham worked as a substitute teacher for the Albuquerque Public Schools ("APS") for approximately fifteen years.  In March of 2008, APS learned that Ms. Latham's dog Bandit had accompanied her to various substitute teaching assignments.  APS directed Ms. Latham to stop bringing her dog to these assignments.  Doc. 25, Ex. A.  Pursuant to Section 504 of the Americans with Disabilities Act, on April 4, 2008, Ms. Latham submitted a formal request for accommodation to APS.  *See* Doc. 25, Ex. C.  In this request she stated that she has asthma, which impairs her ability to breathe and causes acute flare-ups.  She further stated that Bandit could warn her before a flare-up, and without her dog, risk of an asthma attack was greater.  She attached an evaluation from her doctor, Dr. William Anderson, diagnosing her with "asthma with emotional

trigger components" and corroborating Ms. Latham's claim that her condition impairs her ability

to breathe. Doc. 25, Ex. D at 1. Dr. Anderson further wrote that because of the asthma, Ms. Latham

was unable to teach full-time as her condition affected her ability to think and interact with others.

*Id.* Dr. Anderson concluded that Ms. Latham could perform all essential job functions with the help

of a service dog, "[a]s per Dr. Kostranchuk, M.D. psychiatrist." *Id.* at 2.

Ms. Latham and APS then began discussing possible ways in which her disability could be

accommodated, known as the "interactive process" under the Americans with Disabilities Act

("ADA"). *See* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation

it may be necessary for the covered entity to initiate an informal, interactive process with the

qualified individual with a disability in need of the accommodation. This process should identify

the precise limitations resulting from the disability and potential reasonable accommodations that

could overcome those limitations."). APS agreed to allow Ms. Latham to bring Bandit to teaching

assignments for the remainder of the school year while the parties engaged in the interactive process.

Doc. 25 at 4. During this process, Ms. Latham did not submit any medical records from her

psychiatrist, Dr. Lorian Kostranchuk, but she submitted a letter in which Dr. Kostranchuk states:

"Ms. Latham requires the presence of her therapy dog, Bandit, for assistance in preventing stress

induced asthma attacks." Doc. 25, Ex. G. She also submitted a letter from Dr. Anderson in which

he states: "Terry Latham has asthma with emotional triggers . . . [and] she needs a companion dog

with her while she works to calm the emotional triggers during work." Doc. 25, Ex. H.

Because the letters from Ms. Latham's doctors did not make clear the severity of her asthma

nor her potential need for accommodation, APS requested that Ms. Latham submit medical records

to its medical consultant, Dr. G. Theodore Davis, so that Dr. Davis could assess whether Ms. Latham

had a disability that required a reasonable accommodation.  Doc. 25, Ex. I.  APS's request for

medical records, dated April 29, 2008, specifically lays out the areas where APS states it needs more

documentation from Ms. Latham.  *See* Doc. 25, Ex. I.  APS's position as explained in its April 29th

letter can be summarized as follows: (1) the various documentation that Ms. Latham provided did

not clearly support a finding that she was disabled; (2) Ms. Latham did not provide adequate

documentation to support her assertion that Bandit warned her before the onset of an asthma attack;

(3) the doctors' characterizations of Bandit as a "companion dog" and a "therapy dog" undermined

Ms. Latham's assertions that she was in fact a "service dog"; and (4) Ms. Latham had not provided

documentation of the service dog tasks that Bandit was trained to perform.  *Id.*  In conclusion, APS

requested that Ms. Latham provide medical records from Drs. Anderson and Kostranchuk so that

APS could better assess whether or not Ms. Latham had a qualifying disability under the ADA, and

whether or not such condition required APS to make a reasonable accommodation.  *Id.* at 3.

Pursuant to the advice of Dr. Kostranchuck, Ms. Latham did not submit psychiatric records

to APS.  Doc. 34 at 6.  However, she submitted records from Dr. Anderson.  Doc. 25 at 6.  Ms.

Latham also further articulated the precise tasks that Bandit performed as a service dog: (1) she

carried Ms. Latham's medication and retrieved water bottles so Ms. Latham could take the

medication; (2) she reminded Ms. Latham to take her medication on schedule; (3) she could retrieve

a phone so Ms. Latham could call 911 in the event of an attack; (4) she could bark to notify others

of Ms. Latham's need for medical assistance; and (5) she notified Ms. Latham prior to the onset of

an attack by sitting on her feet and whining in a particular manner.  Doc. 25, Ex. N.

In addition to providing this information, Ms. Latham stated that she wished to meet

personally with Dr. Davis, rather than having him evaluate her asthma based solely on her medical

records.  Doc. 34 at 4.  Dr. Davis was unwilling to meet with Ms. Latham.  *Id.*  However, he

reviewed her records, which included results from tests performed by pulmonary specialists, and

concluded that Ms. Latham had asthma involving "the mildest physiological category of pulmonary

impairment."  Doc. 25, Ex. O at 3-5.  Dr. Davis opined that nothing in Ms. Latham's records

supported her claim that a service dog was medically necessary.  *Id.*  He also noted that Ms. Latham

competed internationally in Olympic distance triathlons and duathlons, and an internet search of

records of her athletic events indicated that she had never requested that her service dog be allowed

to accompany her during these races.  *Id.*

Pursuant to Dr. Davis's medical conclusions, APS decided that Ms. Latham was not a

disabled person within the meaning of the ADA and that Bandit was not a medically necessary

service dog.  Doc. 25 at 9.  Although APS had allowed Ms. Latham to bring Bandit to teaching

assignments for the remainder of the 2007-2008 school year, it denied her request to bring Bandit

on teaching assignments during the 2008-2009 year.  *Id.*

On June 27, 2008, Ms. Latham filed a Charge of Discrimination with the New Mexico

Human Rights Division .  On December 5, 2008, the Human Rights Division issued a Determination

of Probable Cause that APS discriminated against Ms. Latham.  Doc. 1 at 17-18; Doc. 2 at 3.  During

this time, Ms. Latham continued to work for APS without the accompaniment of Bandit until she

removed her name from APS's Substitute Employee Management System on April 23, 2009.  Doc.

25 at 9.  Ms. Latham now works as a substitute teacher in Florida and no longer lives in New

Mexico, and there is no evidence that she again attempted to work for APS anytime after April 23,

2009.  Doc. 25 at 10.

In her complaint, Ms. Latham alleges that APS's actions were both discriminatory and

retaliatory under the New Mexico Human Rights Act ("NMHRA"), the ADA, and the Rehabilitation

Act, and further alleges that APS's actions amounted to a violation of 42 U.S.C. § 1983.  APS now

moves for partial summary judgment on Ms. Latham's discrimination claims.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." *Somoza v. Univ. of Denver*, 513 F.3d 1206,

1211 (10th Cir. 2008) (quoting FED. R. CIV. P. 56(c)).  When applying this standard, the Court must

examine the factual record in the light most favorable to the nonmoving party.  *Belhomme v.*

*Widnall*, 127 F.3d 1214, 1216 (10th Cir. 1997).  However, "where the nonmoving party will bear

the burden of proof at trial on a dispositive issue, . . . [she must] go beyond the pleadings and . . .

designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477

U.S. 317, 324 (1986).

## DISCUSSION

## I.       Americans with Disabilities Act and Rehabilitation Act

Claims of discrimination under the ADA and the Rehabilitation Act involve identical

inquiries. *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010); 29 U.S.C. 794(d) ("The

standards used to determine whether this section has been violated in a complaint alleging

employment discrimination under this section shall be the standards applied under . . . the Americans

with Disabilities Act of 1990.").  Section 504(a) of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States . . . shall,
> solely by reason of her or his disability, be excluded from the participation in, be
> denied the benefits of, or be subjected to discrimination under any program receiving
> Federal financial assistance . . . .

29 U.S.C. § 794(a). To establish a prima facie case of discrimination under the ADA or the Rehabilitation Act, a plaintiff must show "(1) that [she] is disabled under the Act; (2) that [she] would be 'otherwise qualified' to participate in the program; (3) that the program receives federal financial assistance . . . ; and (4) that the program has discriminated against the plaintiff." *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004). The Court therefore begins with the threshold inquiry of whether or not Ms. Latham is disabled.

### A.       Retroactivity of Americans with Disabilities Act Amendments Act

Because the alleged violation occurred in 2008, the Court analyzes Ms. Latham's claim under the pre-2009 ADA, rather than the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), which went into effect on January 1, 2009. Pub. L. No. 110-325, § 8, 122 Stat. 3553 ("This Act and the amendments made by this Act shall become effective on January 1, 2009"); *Landgraf v. USI Film Products*, 511 U.S. 244, 264 (1994) ("congressional enactments . . . will not be construed to have retroactive effect unless their language requires this result" (quotation omitted)). Courts having examined the question have determined that the 2008 amendments to the ADA do not apply retroactively to alleged violations occurring prior to 2009. *See*, *e.g.*, *Carmona v. Southwest Airlines*, 604 F.3d 848, 856-57 (5th Cir. 2010) ("[we have already declined] to find that Congress intended the ADAAA to apply retroactively"); *Becerril v. Pima County Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009) ("we do not agree with [the plaintiff] that . . . the ADAAA, which alters the ADA's definition of 'disability,' applies retroactively").

Although Ms. Latham frames APS's actions as a "continuing violation" of the ADA, Doc. 34 at 15, the Court agrees with APS that this is a mischaracterization. Ms. Latham essentially argues that a defendant's denial of an accommodation request amounts to a continuing violation so long as

the defendant does not reverse course and approve the request. *See* Doc. 34 at 14-15. If the Court were to adopt this principle, it would subject defendants such as APS to unforeseeable legal consequences by applying an unknown definition of "disability" to conduct occurring prior to Congress's official enactment of this new definition. Contrary to Ms. Latham's assertions, the alleged violation is APS's decision not to grant Ms. Latham her requested accommodation; the fact that APS has not taken the affirmative step of reversing its denial cannot be construed as a continuing violation. The Court accordingly looks to the unamended ADA and the case law interpreting it to determine whether Ms. Latham satisfied her burden of demonstrating that she has a "disability" as defined under the ADA.

### B.    Plaintiff's Evidence of her Alleged Disability

To prove that she has a disability under the ADA, Ms. Latham must show that she has a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). Regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") provide that an impairment "substantially limits" a major life activity if it renders the individual:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same activity.

29 C.F.R. § 1630.2(j). "Not every impairment that affects an individual's major life activities is a substantially limiting impairment." *Ellenberg v. New Mexico Military Institute*, 572 F.3d 815, 821 (10th Cir. 2009).

7

Ms. Latham argues that she is a disabled individual under the ADA and the Rehabilitation Act because her asthma substantially limits her ability to breathe.  Whereas it is undisputed that breathing is a major life activity, to demonstrate that she is "substantially limited" in her ability to breathe, Ms. Latham must show that her breathing is "significantly restricted" as compared to the average person.  *See* 29 C.F.R. § 1630.2(j).  Her impaired breathing must "prevent[] or severely restrict[] [her] from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002).  "A medical diagnosis is insufficient, rather, the ADA requires plaintiffs to offer evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010) (quotation omitted).

In considering whether Ms. Latham's asthma "substantially limits" a major life activity, the EEOC instructs courts to consider the following factors:

> (i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j).  With respect to the first and second factors, Ms. Latham's physician, Dr. Anderson, states that her asthma is "lifetime – chronic."  Doc. 25, Ex. D at 1.  He elaborates insofar as to state that the condition is degenerative "but chronic stable controlled[;] allergies and asthma lifelong." *Id*.  The term "chronic" has various definitions, two of which are "constant; habitual; inveterate" and "continuing a long time or recurring frequently." *Random House Webster's Unabridged Dictionary* 369 (2d ed., Random House 2001).  When referring specifically to a medical condition, "chronic" is defined as "having long duration." *Id*.

Dr. Anderson's observations support a conclusion that Ms. Latham's asthma is a lifelong condition, and APS does not dispute this finding. Doc. 37 at 3. However, Ms. Latham has not presented any evidence regarding the *nature or severity* of her impairment. Whereas the evidence demonstrates that the duration of Ms. Latham's condition is indefinite, the Court cannot conclude that her asthma is severe in nature. Indeed, Ms. Latham admitted in her deposition that no doctor has diagnosed her with severe asthma, but rather "that was my description." Doc. 25, Ex. P at 6.

Simply put, Ms. Latham has advanced no evidence demonstrating that her asthma is severe, and the Court can find no basis to dispute Dr. Davis's conclusion that Ms. Latham's asthma represents the "mildest physiological category of pulmonary impairment." Doc. 25, Ex. O at 3.[1] Although Ms. Latham attempts to discredit Dr. Davis's conclusion, arguing "[i]t is not the best practice to make an evaluation of whether a service dog is necessary without examining the person," Doc. 34 at 4, she points to no authority to support her suggestion that Dr. Davis was required to evaluate her personally. Indeed, the EEOC's interpretive guide to the relevant provision of the ADA provides: "The provision *permits* employers or other covered entities to make inquiries or require medical examinations necessary to the reasonable accommodation process described in this part." 29 C.F.R. pt. 1630, App. § 1630.14(c) (emphasis added). The interpretive guide's use of the term "permits" undermines Ms. Latham's argument that the employer was in fact *required* to examine her, and Ms. Latham has advanced no authority suggesting that Dr. Davis was obligated to meet with

---

[1]In an e-mail to APS's counsel dated June 3, 2008, Ms. Latham disputes Dr. Davis's conclusion that she has "very mild asthma," and she claims to have "severe asthma." Doc. 34, Ex. 13. To support her claim, she references "a description of the four levels of asthma" that she faxed to APS's counsel. *Id.* The Court has not been provided with this description and cannot conclude based on Ms. Latham's unsupported assertions that her condition constitutes "severe" as opposed to "mild" asthma.

her personally prior to issuing his medical opinion.

In examining the third factor under the EEOC's regulations (the actual or projected "permanent or long term impact" of the impairment), the Court notes that no physician has suggested that Ms. Latham's asthma will become more severe than it presently is.  She has had asthma since childhood that she regulates through the use of an inhaler as well as the following medications: Advair, Theo, Spirivia and Seravant.  Doc. 34, Ex. 13.[2]  Moreover, in adulthood Ms. Latham has competed nationally and internationally in triathlons and duathlons, which require substantial athletic training and endurance.  *See* Doc. 25, Ex. O at 4 & Ex. P at 3-5.  Despite Ms. Latham's argument that she does not compete at the elite level, Doc. 34 at 6, her ability to participate as an amateur in Olympic distance triathlons and duathlons demonstrates that she has successfully coped with the long-term effects and challenges of asthma.  Ms. Latham has presented no evidence to contradict the inference that someone whose breathing is "significantly restricted" as compared to the average person would not be able to engage in such athletic endeavors.[3]

---

[2]The Court must analyze the severity of Ms. Latham's condition with reference to corrective mitigating measures.  *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 482-83 (1999) ("Because the phrase 'substantially limits' appears in the Act in the present indicative verb form, we think the language is properly read as requiring that a person be presently – not potentially or hypothetically – substantially limited in order to demonstrate a disability . . . .  A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity.").

[3]In the email referenced in footnote 1, Ms. Latham states as follows: "[My treatment regime] is consistent with treatment for severe asthma.  Also severe asthma affects asthmatic[s] in cold weather.  I cannot run outside below 50 degrees Fahrenheit without wheezing."  Doc. 34, Ex. 13.  The fact that Ms. Latham is unable to run in cold weather is insufficient to demonstrate that she is "[s]ignificantly restricted as to the condition, manner or duration under which [she] can [breathe] as compared to the condition, manner, or duration under which the average person in the general population can [breathe]," as required by the EEOC regulations.  29 C.F.R. § 1630.2(j)(1)(ii).

10

Careful review of the evidence Ms. Latham has presented to support her disability claim, in light of other cases examining similar facts, demonstrates that she has not met her burden of proving that she is substantially limited in her ability to breathe.  In *Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242 (10th Cir. 2004), the plaintiff alleged that her employer failed to reasonably accommodate her asthmatic condition in violation of the ADA, and the Tenth Circuit found that triable issues of fact existed as to whether or not the plaintiff was disabled.  Like Ms. Latham, the plaintiff in *Albert* had suffered from asthma since childhood.  *Id*. at 1245.  Unlike Ms. Latham however, medical providers had testified that the *Albert* plaintiff "was symptomatic most of the time . . . [and] suffered from the most serious form of asthma."  *Id*. at 1251.  They instructed her to "avoid crowds, cigarette smoke, people wearing perfume, . . . outdoor activities[,] being active at night, . . . [and] enclosed spaces with cleaning agents."  *Id*. at 1245.  Because of the "numerous aggravating substances" to which she was exposed in her job as a cashier for the defendant, the plaintiff's health care provider instructed her to avoid cashiering.  *Id*. at 1245-46.

In contrast to the plaintiff in *Albert*, Ms. Latham's physician, Dr. Anderson, characterizes her condition as "asthma with emotional trigger components."  Doc. 25, Exs. D & H.  He states that her condition affects her ability to think and interact with others, but further states: "Classroom duties may be performed daily without other[4] restriction."  Doc. 25, Ex. D at 1.  Ms. Latham's psychiatrist, Dr. Kostranchuk, states only that Ms. Latham experiences "stress induced asthma attacks."  Doc. 25, Ex. G.  APS's medical expert, Dr. Davis, concludes based on results from a 2002

---

[4]Based on Dr. Anderson's subsequent comment that Ms. Latham could perform "all essential functions, responsibilities, duties and physical demands . . . with the aide [sic] of a service dog," *id*., Ex. D at 2, the Court construes his remark to mean that Ms. Latham was in fact impaired in her ability to perform these duties insofar as she needed a service dog to perform them, but she suffered no other specific impairment.

test performed by a pulmonary specialist that Ms. Latham's asthma represents the "mildest physiological category of pulmonary impairment." Doc. 25. Ex. O at 3.[5] These various diagnoses, without more, do not support a finding that Ms. Latham's asthma constitutes a disability under the ADA.

The Court has also looked to out-of-circuit case law for guidance, and the cases overwhelmingly support a conclusion that Ms. Latham is not disabled under the ADA. In *Fredericksen v. United Parcel Service, Co.*, 581 F.3d 516, 522 (7th Cir. 2009), the Seventh Circuit found the plaintiff was not substantially limited in his ability to breathe when he demonstrated: (1) he had difficulty breathing; (2) he could not "get a full breath" and "under certain conditions" was unable "to sustain any exertion in the way that an average person would be able to;" and (3) he took prescription asthma and allergy medication to ameliorate his breathing problems. In support of its conclusion that the plaintiff had not met his burden under the ADA, the court noted that "[v]ague assertions of difficulty performing a major life activity do not create a genuine issue of material fact, particularly when unaccompanied by any evidence that the limitation is substantial compared to that of other adults." *Id*. at 522-23. Similarly, in *Russell v. Clark County School Dist.*, 232 F.3d 896 (9th Cir. 2000) (unpublished), the Ninth Circuit affirmed the district court's judgment as a matter of law in favor of the defendant in a case involving a school teacher who alleged that her asthma constituted a disability under the ADA. In *Russell*, the plaintiff failed to provide evidence as to the severity or frequency of her asthma attacks, nor did she explain how her asthma generally affected her life

---

[5]According to Dr. Davis, the test revealed: "minimal obstruction of the airways of the lungs; obstructive defect of the airways of the lungs of a very mild degree; normal lung volumes; and normal diffusion capacity . . . of carbon monoxide, which is another important determinant of lung function." Doc. 25, Ex. O at 3.

activities.  *Id*. at \*1.  Like the plaintiffs in *Fredericksen* and *Russell*, Ms. Latham has failed to provide any evidence as to the severity or frequency of her asthma attacks, aside from her own unsupported assertions.  These "vague assertions," *see Fredericksen*, 581 F.3d at 522, do not create a genuine issue of material fact.

In addition to these cases generally outlining an ADA plaintiff's burden to produce evidence to support an asthma-based claim, other out-of-circuit cases address situations that are factually similar to the instant case.  In *Muller v. Costello*, 187 F.3d 298, 314 (2d Cir. 1999), the Second Circuit found that the plaintiff had not demonstrated that he was substantially limited in the major life activity of breathing when: (1) he participated in sports outside of work; (2) medical experts testified that the plaintiff's asthma was severe and could be "triggered by any number of environmental irritants;" and (3) the plaintiff testified that "he felt pretty good" when he used an inhaler.  The court held that the plaintiff's "substantial physical activity . . . cuts against his claim of disability."  *Id*.  Similarly, in *Ventura v. City of Independence*, 108 F.3d 1378 (6th Cir. 1997) (unpublished), the Sixth Circuit affirmed the district court's granting of summary judgment in favor of the defendant, agreeing that a physically active plaintiff had not met the threshold requirement of proving that he was disabled.  The court stated that the plaintiff's activities – which included "playing baseball and football, performing calisthenics, walking, playing the saxophone, occasionally running, singing, and water skiing" – belied his claim that his ability to breathe was significantly restricted.  *Id*. at \*2.  In contrast to *Muller*, neither Dr. Davis nor Dr. Anderson have characterized Ms. Latham's asthma as "severe," making her case even weaker than the *Muller* plaintiff's.  Moreover, like the plaintiffs in *Muller* and *Ventura*, Ms. Latham participates in demanding athletic activities that belie her claim that her ability to breathe is significantly restricted.

Although evidence that a plaintiff participates in athletic endeavors does not automatically require a finding that her asthma does not substantially limit her ability to breathe, Ms. Latham has presented no evidence to rebut the Court's proper inference that her ability to breathe is not significantly restricted in comparison to the average person.

Finally, the Court notes that various district courts have held that plaintiffs whose medical conditions are arguably more severe than Ms. Latham's are not disabled under the ADA. *See*, *e.g.*, *White v. Honda of America Mfg., Inc.,* 241 F. Supp. 2d 852 (S.D. Ohio 2003) (granting summary judgment for employer when employee's intermittent asthma attacks rendered her unable to breathe but she was able to perform activities such as driving, pumping her own gas, walking, exercising, smoking cigarettes, and going to restaurants); *Reidman v. John Hewitt & Associates, Inc.*, No. 00-251-PH, 2001 WL 506864 (D. Me. May 15, 2001) (holding employee failed to demonstrate as matter of law she had disability for purposes ADA even though she had suffered twenty asthma attacks at work). Those plaintiffs who have met their burden under the ADA have presented evidence of much more severe asthma than Ms. Latham alleges. *See*, *e.g.*, *Geuss v. Pfizer, Inc.*, 971 F. Supp. 164 (E.D. Pa. 1996) (plaintiff demonstrated that minor instances of physical exertion, such as jogging down driveway or running 100 feet to his injured child, were sufficient to trigger asthma attack).

Having concluded that Ms. Latham is not disabled under the ADA or the Rehabilitation Act, the Court finds that APS was under no legal obligation to accommodate Ms. Latham's condition. As Ms. Latham's condition does not constitute a disability, the Court need not resolve the disputed question of whether or not Bandit was a "service dog," or any of the other issues Ms. Latham frames as "disputed material facts." *See* Doc. 34 at 2.

## II.      New Mexico Human Rights Act

Under the NMHRA, it is unlawful for an employer to discharge or discriminate "against any person otherwise qualified because of . . . physical or mental handicap."  N.M. STAT. ANN. § 28-1-7. In analyzing claims under the NMHRA, New Mexico courts look to federal legal standards for guidance.  *See Nava v. City of Santa Fe*, 103 P.3d 571, 573-74 (N.M. 2004) ("[The] language from the NMHRA tracks Title VII of the Civil Rights Act of 1964 . . . .  For this reason, when considering claims under the NMHRA, we may look at federal civil rights adjudication for guidance in interpreting the NMHRA" (quotation omitted)).

The New Mexico Supreme Court has warned: "Our reliance on the methodology developed in the federal courts . . . should not be interpreted as an indication that we have adopted federal law as our own."  *Gonzales v. New Mexico Dep't of Health*, 11 P.3d 550, 557 (N.M. 2000) (quoting *Smith v. FDC Corp.*, 787 P.2d 433, 436 (N.M. 1990)).  Nonetheless, with respect to disability discrimination claims under the NMHRA, New Mexico courts do indeed apply the same standards as those set forth in the ADA.  *See Trujillo v. Northern Rio Arriba Elec. Co-op, Inc.*, 41 P.3d 333, 338 (N.M. 2001) ("[T]he closest federal counterpart [to a disability discrimination claim under the NMHRA]  would be the Americans with Disabilities Act . . . .  Although the New Mexico statute uses the terms 'medical condition' or 'handicap' rather than the ADA term 'disability,' we believe in the context of this case that the terms can be viewed as interchangeable.").  The New Mexico Supreme Court's interpretation of the NMHRA is binding on this Court, and having determined that Ms. Latham is not disabled under the ADA, the Court accordingly finds that she is not disabled under the NMHRA.

**III.     Section 1983 Claim**

To succeed on her § 1983 claim, Ms. Latham must show that APS, acting under color of state law, deprived her of rights secured by the Constitution or federal law.  Ms. Latham can prevail under § 1983 only if she first demonstrates that APS's actions violated her rights under the ADA or the Rehabilitation Act.  As discussed above, Ms. Latham failed to demonstrate that she has a "disability" under the ADA or Rehabilitation Act.  Therefore, she cannot demonstrate that APS discriminated against her under these federal disability laws, and accordingly her § 1983 claim must fail.

**CONCLUSION**

The Court does not doubt that the accompaniment of a service dog calms the "emotional triggers" that Ms. Latham experiences in connection with her asthma.  The Court is pleased that Ms. Latham has found employment with a school that allows her to bring her dog to work, as such an accommodation will surely mitigate the stress that naturally accompanies substitute teaching, particularly when such stress is exacerbated by a medical condition.  However, the relevant statutes and case law set a high bar for plaintiffs to demonstrate that a condition amounts to a "disability," and Ms. Latham has failed to provide evidence that she is disabled under the Rehabilitation Act, the ADA, or the NMHRA.  **IT IS THEREFORE ORDERED** that Defendant's Motion and Memorandum for Partial Summary Judgment on Plaintiff's Discrimination Claims [Doc. 25] is **GRANTED**.

Dated: this 21st day of September, 2010.

MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE