IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TERRY LATHAM,

        Plaintiff,

vs.                                                                           No. 09 CV 0643 MV/ACT

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff's Motion in Limine to Exclude Evidence of Dog Misbehavior [Doc. 41]; Defendant's Motion to Limit Testimony from Plaintiff's Designated Expert Witness Dr. Anderson [Doc. 42]; and Defendant's Motion in Limine to Exclude the Expert Testimony of Jeanine Brawn [Doc. 43].  The Court has considered the Motions, their respective Responses [Docs. 45 & 44], the subsequent Replies [Docs. 46, 50 & 49], the relevant law, and being otherwise fully informed of the premises **FINDS** as follows: (1) Plaintiff's Motion in Limine to Exclude Evidence of Dog Misbehavior shall be **GRANTED**; (2) Defendant's Motion to Limit Testimony from Plaintiff's Designated Expert Witness Dr. Anderson shall be **DENIED** at this time; and (3) Defendant's Motion in Limine to Exclude the Expert Testimony of Jeanine Brawn shall be **GRANTED.**

**I.      Evidence of Dog Misbehavior**

Defendant intends to introduce evidence at trial of an incident that occurred after Defendant denied Plaintiff's request for accommodation in June of 2008, and after Plaintiff removed her name from the substitute teacher system in April or May of 2009.  Sometime after these dates, an APS teacher brought his or her pet dog (*i.e.* not a service animal) to the classroom, and a student is now

alleging in a separate and unrelated lawsuit that the dog attacked him. Defendant seeks to introduce this evidence at trial for the purpose of showing that the school district's no-pet policy is rooted in a legitimate and important objective of protecting students and preventing potential lawsuits. Defendant states: "These considerations are legitimate, nondiscriminatory[1] reasons for why APS denied Plaintiff's request for accommodation when it determined that Plaintiff's dog was not a legitimate service animal[.]" Doc. 45 at 3. Plaintiff argues that the evidence Defendant seeks to introduce is irrelevant.

The Court agrees that this evidence is irrelevant. The Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. A specific incident of a pet bite that occurred after the implementation of Defendant's no-pet policy and after Plaintiff was no longer working for Defendant, does not make it more or less probable that Defendant had legitimate reasons for denying Plaintiff's request for accommodation. The fact that a teacher's pet dog is alleged to have bitten a student after the events giving rise to the instant lawsuit demonstrates that this incident could not have been a factor in the fashioning of the no-pet policy, nor could it have affected Defendant's decision to deny Plaintiff's request for accommodation. Whether or not this alleged dog bite occurred, Defendant may present witnesses to testify as to the purposes behind the no-pet policy without introducing evidence of any specific instances occurring after May of 2009.

---

[1]On September 21, 2010, the Court granted Defendant's Motion for Partial Summary Judgment on Plaintiff's discrimination claims. Doc. 57. However, Defendant's arguments are still relevant to the issue of Plaintiff's retaliation claims.

II.    **Testimony of Dr. William Anderson, M.D.**

Defendant states that Dr. William Anderson never provided an expert report in accordance with Fed. R. Civ. P. 26, and accordingly seeks to prevent Plaintiff from introducing any testimony of Dr. Anderson "that exceeds the scope of his first-hand, independent diagnosis and treatment of Plaintiff[.]" Doc. 42 at 1. Plaintiff responds that she has given Defendant "no reason to believe that Dr. Anderson will provide anything other than that," Doc 44 at 2, and requests that the motion be denied.

Defendant's motion is based on its mere suspicion that Dr. Anderson will testify outside the scope of his first-hand knowledge of his treatment of Plaintiff, and is therefore entirely speculative. A motion in limine based on speculation is improper, and the Court will not play a guessing game as to the scope of Dr. Anderson's testimony in its consideration of Defendant's motion. *See United States v. Cline*, 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002), *aff'd*, 349 F.3d 1276 (10th Cir. 2003) (court should not have to rule in a vacuum or guess at what evidence should be included within scope of its ruling; often court must wait until context of trial before it can assess factual context of evidence and determine admissibility). The Court will therefore deny Defendant's motion at this time, but Defendant is welcome to object to any specific testimony at trial that goes beyond the scope of Dr. Anderson's first-hand knowledge of his treatment of Plaintiff.

III.   **Proffered Expert Testimony of Jeanine Brawn**

Defendant moves to exclude the expert testimony of Jeanine Brawn on grounds that "her proffered opinion and report do not meet the standards for admissibility set forth in Federal Rules of Evidence 702 and 402 as they lack a reliable foundation and are not probative of any issues in this case." Doc. 43 at 1. Defendant argues that Ms. Brawn's expert report does not satisfy Rule 702 because she does not explain how her experience and training support her opinion. It further argues

3

that the subject matter of Ms. Brawn's testimony, as forecasted in her expert report, is irrelevant.

Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. This rule requires that an expert's testimony be both reliable, in that the witness is qualified to testify regarding the subject, and relevant, in that it will assist the trier in determining a fact in issue. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-92 (1993).

In *Daubert*, the Court identified four factors that a trial court may consider with respect to reliability: (1) whether the theory at issue can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards controlling the methodology's operation; and (4) whether the theory has been accepted in the relevant scientific community. 509 U.S. at 593-94. This list is neither definitive nor exhaustive, and a district court has wide discretion in assessing an expert's reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999). This Court must properly focus not on the expert's particular conclusions, but rather on her methodology in reaching those conclusions. *Daubert*, 509 U.S. at 595.

If the district court finds that the expert's testimony meets these criteria for reliability, the court should next consider other non-exclusive factors to determine whether the testimony will assist the trier of fact: (1) whether the testimony is relevant; (2) whether it is within the jury's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility. *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006) (quotations

omitted).  The Court's ultimate inquiry is "whether [the] reasoning or methodology properly can be applied to the facts in issue."  *Daubert*, 509 U.S. at 593.

The party proffering expert testimony bears the burden of proving by a preponderance of the evidence that the testimony is admissible.  *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (citations omitted).  The proponent of the expert testimony "must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts that satisfy Rule 702's reliability requirements."  *Goebel v. Denver and Rio Grande Western R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003).

The Federal Rules of Civil Procedure require that a proposed expert prepare and submit a written report that includes, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them; [and] the data or other information considered by the witness in forming them."  FED. R. CIV. P. 26(a)(2)(B)(i)–(ii).  Ms. Brawn's expert report is a short letter whose purpose is to respond to Plaintiff's counsel's "request of my testimony that it is possible for a Beagle to Alert/Respond to an 'episode' of Asthma."  Doc. 43, Ex. A.  The letter explains that "Dogs usually cannot be taught to *Alert* to Asthma or Seizures, but some dogs can be trained to *Respond* to an 'episode' & over time some dogs will naturally start to *Alert* before the 'episode' which then gives us a way to let them know that this is what we are looking for."  *Id*.  Ms. Brawn goes on to explain that she has taught a dog owner to train her two Beagles to respond (and one of them learned to alert) to asthma attacks and has also trained a Vizsla to respond to narcolepsy.  The letter also includes a list of Ms. Brawn's work history, certifications and memberships.  In a subsequent letter clarifying her previous letter's focus on Beagles and her specific conclusion that "a Beagle would be a good choice nose-wise," *id*., to work with an asthma patient, she states: "Any dog with the proper mental & physical capabilities has the *possibility* of

5

learning to become as [sic] Assistance Service Dog.  I mentioned the breeds of Beagle and Vizsla as a reference point for breeds that I personally have worked with for that kind of Service work." Doc 44, Ex. 3.

Ms. Brawn's proffered expert report does not comply with Rule 26's requirement that the expert include the basis and reasons for her opinion and the data or other information she considered in forming them.  Nor does the proffered report satisfy Plaintiff's burden of "show[ing] that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts that satisfy Rule 702's reliability requirements."  *Goebel*, 346 F.3d at 991. Although her letter includes a list of credentials – including certifications from the Certification Council for Professional Dog Trainers, National Association of Dog Obedience Instructors, and Association of Pet Dog Trainers – it does not reference or explain how the training she received contributed to her conclusion that some dogs can naturally begin to alert to asthma attacks. Moreover, Ms. Brawn includes a list of "Assistance Service Dog Activities," Doc. 43, Ex. 1 at 3, but nowhere in her letter discussing dogs' potential for alerting to asthma attacks does she explain how her service dog-related training contributed to her opinions.

Finally, even if Ms. Brawn's report were to satisfy Rule 26 and *Daubert's* reliability prong, the particular contents of the report are minimally relevant and they would be unlikely to assist the trier of fact in determining a fact in issue.  The letter, even when viewed in light of Ms. Brawn's subsequent letter of clarification, focuses primarily on why a Beagle would be a good breed of dog for working with an asthma patient.  Plaintiff's dog, Bandit, was an Australian Cattle Dog.  The testimony would therefore be unlikely to assist the jury in determining whether or not Bandit was able to alert to the onset of an asthma attack.

For the foregoing reasons, Plaintiff's Motion in Limine to Exclude Evidence of Dog Misbehavior shall be **GRANTED**; Defendant's Motion to Limit Testimony from Plaintiff's Designated Expert Witness Dr. Anderson shall be **DENIED** at this time; and Defendant's Motion in Limine to Exclude the Expert Testimony of Jeanine Brawn shall be **GRANTED.**

Dated: this 28th day of March, 2011.

_____
**MARTHA VAZQUEZ**
**UNITED STATES DISTRICT JUDGE**